# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**RICKEY LEE CHRISTMAS,**

    **Plaintiffs,**

**v.**                                    **CASE NO.: 8:20-cv-00259-TPB-AAS**

**J NABORS and MARSHA HILL,**

    **Defendants.**

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

To guard against illicit, harmful chemicals entering the Polk County Jail on papers mailed to inmates, the jail uses a legal mail scanning, storage, and viewing system developed by Smart Communications. Inmates scan their own original legal mail documents, which are then converted and saved as PDF files in each inmate's individual legal mail account. The inmate reads the scanned PDF files on his or her individual legal mail account, accessed by the inmate's password, known only by the inmate. No jail official or jail employee has access to the electronic mail files, which are encrypted and stored in a private offsite server controlled by Smart Communications.

Plaintiff's entire claim hangs on his speculation that jail employees could have opened his legal mail because the legal mail files are stored electronically or

"digitized." Plaintiff admits that he does not know nor have any evidence that anyone at the jail ever opened or read his mail. Instead, he states that his First Amendment rights were nevertheless violated because the possibility exists that someone could have somehow accessed the electronic files and read his mail. However, a possibility that someone could read an inmate's legal mail is not a sufficient basis for a constitutional violation – nor is an inmate's subjective fear that his legal mail might be read. Therefore, Plaintiff has failed to submit a genuine dispute of material fact, and Defendant is entitled to judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS

1.      Christmas was housed in the Polk County Jail (South County Jail) for four months in 2015 and shortly thereafter for several years – approximately 2016 to 2021. (Christmas Deposition, Doc. 78-1, p. 15:15-20.)

2.      When Christmas was first housed at the South County Jail, the legal mail process was that the detention deputies would open an inmate's legal mail, shake it out to check for contraband, and hand it to the inmate. (Doc. 78-1, pp. 34:16-35:6; Lt. J Nabors Deposition, Doc. 78-2, pp. 12:24-13:10.)

3.      When this earlier legal mail process was in place, Christmas kept the originals of his legal mail in his cell – a room that he shared with other people. (Doc. 78-1, p. 35:7-9.)

**Polk County Adopts the Smart Jail Mail System**

4.     In November 2015, thirteen inmates of the Polk County Jail became seriously ill, requiring transport to outside hospitals. (Chief Michael Allen Affidavit, Doc. 78-3, ¶ 10.) An investigation revealed the source of the life-threatening illnesses was illicit chemicals mailed into the jail on pieces of paper laced with chemicals. (*Id.*) The chemicals were odorless and invisible to detention deputies reviewing the mail. (*Id.*)

5.      Shortly thereafter, a similar issue manifested regarding legal mail, revealing the need to prevent illicit substances from entering the jail in personal and legal mail. (Doc. 78-3, ¶¶ 11-12; Doc. 78-2, pp. 15:16-16:16.) The result was the current policy, PCSO Department Directive 9.2, which was implemented in March 2019. (Doc. 78-3, ¶ 12.)

6.     Chief Michael Allen, the Chief of the Department of Detention for Polk County Sheriff's Office, was part of the team that instituted Department Directive 9.2, which ensures that paper does not enter the Polk County Jail through the mail. (Doc. 78-3, ¶¶ 5-6.)

7.     In order to implement Department Directive 9.2, Polk County Sheriff's Office hired Smart Communications to provide personnel, equipment, and software. (Justin Scott Declaration, Doc. 78-4, ¶¶ 1-10.) Personal or general inmate mail is sent to a P.O. Box monitored by Smart Communications and then

scanned into the system by Smart Communications employees, while inmate legal mail is mailed to the Central County Jail and then delivered to the recipient inmates. (Doc. 78-4, ¶¶ 8-12; Doc. 78-3, ¶¶ 13-14.)

8.      Defendant Nabors was not involved in the decision to implement Directive 9.2 or the decision to utilize the Smart Jail Legal Mail System. (Doc. 78-2, p. 19:6-16.)

**The Smart Jail Mail System Process for Legal Mail**

9.      Under the new system and pursuant to Directive 9.2, after legal mail is delivered to the inmates, as under the old system, a detention deputy opens the legal mail in the inmate's presence and shakes it out to check for contraband. (Doc. 78-1, p. 36:21-24; Doc. 78-3, ¶ 13.)

10.     Using equipment owned and provided by Smart Communications, the inmates then scan their legal mail, and the original is placed back into the envelope, resealed, and sent to the inmate's property. (Doc. 78-1, p. 37:1-18; Doc. 78-2, pp. 28:18-29:25; Doc. 78-3, ¶ 14.) The inmate has a choice to shred the original instead of sending it to property. (Doc. 78-2, p. 36:14-21; Doc. 78-3, ¶ 14.)

11.     Throughout the entire process, the inmate is in control of the legal mail item, the computer, and the shredder. (Doc. 78-3, ¶ 15.) The detention deputy is not able to see the computer display. (*Id.*)

12.    The instructions for scanning the legal mail are simple and pop up on the screen for the inmate to follow. (Doc. 78-2, p. 32:11-18.)

13.    Inmates can then log in with the password to read their legal mail on the kiosks in the dayrooms of the dorms. (Doc. 78-1, p. 37:1-18; Doc. 78-2, p. 19:17-25; Doc. 78-3, ¶ 14.)

14.    The inmates are permitted to create a new password when necessary or when they request one. (Doc. 78-2, pp. 27:8-28:17.)

**Christmas Submits a Grievance Regarding the New Mail System**

15.    Christmas complained about both mail systems – personal and legal, stating in a grievance dated August 20, 2019, that having to scan his mail was a violation of his constitutional rights. (Doc. 78-3, ¶ 20.)

16.    Lt. Nabors, who was the administrative lieutenant (second-in-command) of the South County Jail from 2011 to 2019, (Doc. 78-2, pp. 7:16-9:24), answered the grievance promptly, informing Christmas of the purpose of the scanning policy and that he had no authority to change the policy. (Doc. 78-3, ¶ 20.) Lt. Nabors' responses were appropriate. (*Id.*)

17.    One of Nabors' many responsibilities as second-in-command included answering grievances, as the responsibility for answering grievances usually fell to sergeants and lieutenants. (Doc. 78-2, pp. 62:9-63:20.)

18.     The extent of Defendant Nabors' involvement with legal mail under the new system was that Nabors "directly answered grievances" and "enforced" the legal mail policy. (Doc. 78-1, pp. 18:7-15 & 60:9-61:11.)

19.     Christmas complained about being required to scan his legal mail because "other people could possibly read the mail." (Doc. 78-1, p. 35:14-22.)

20.     It is only the possibility of his legal mail being read that concerned Christmas; he does not know that anyone ever read his legal mail, nor does he have any indication that anyone at the Polk County Jail ever read his legal mail or opened it outside of his presence. (Doc. 78-1, pp. 39:3-16, 43:1-12 & 44:11-19.)

21.     Christmas has no knowledge of how the legal mail files were stored electronically, and he does not know whether or how any jail personnel would have access to the electronic mail files. (Doc. 78-1, pp. 42:16-22 & 45:2-10.)

**No Polk County Employee Can Access the Electronic Legal Mail Files**

22.     Detention deputies are not permitted to read an inmate's legal mail nor open an inmate's legal mail outside of the inmate's presence. (Doc. 78-3, ¶ 16; Doc. 78-2, pp. 13:11-14:13 & 17:14-21; Nabors' Answers to Plaintiff's Interrogatories, Doc. 78-5, Response to #3.)

23.     Lt. Nabors never scanned Christmas' legal mail. (Doc. 78-5, Answer to #10.)

24.     Only the inmate scans the legal mail, which is then automatically saved to the system. (Doc. 78-2, pp. 28:18-29:25; Doc. 78-5, Response to #6.)

25.     The legal mail files are encrypted and can only be accessed via the inmate's log-in and password. (Doc. 78-4, ¶¶ 19-26.) The files are electronically stored in the computer's memory only while the document is being processed; thereafter the files are stored in a private offsite server controlled by Smart Communications. (*Id.*)

26.     Neither Lt. Nabors nor any Polk County Jail employee had the ability to access Mr. Christmas' electronically-saved legal mail, whether on the system, computer, or kiosk. (Doc. 78-5, Responses to #6 & 8; Doc. 78-3, ¶¶ 16-17; Doc. 78-4, ¶¶ 14-29.) Nor did Lt. Nabors or any other employee at the Polk County Jail ever read Christmas' legal mail or open it outside of his presence. (Doc. 78-3, ¶ 19.)

27.     If an inmate preferred not to have his or her legal mail scanned, the inmate could choose to have the legal mail taped back up and sent to property. (Doc. 78-2, p. 32:5-10.)

28.     The only difference between the former legal mail policy and the Smart Jail Legal Mail policy is that previously the jail provided the original copies of the legal mail to the inmates, who "were making money on trying to kill each other." (Doc. 78-2, p. 37:2-22.)

## PROCEDURAL POSTURE

After conducting the 28 U.S.C. § 1915A(a) initial screening, this Court dismissed Christmas' myriad claims, including his legal mail claim, because the complaint failed to state a plausible claim. (Doc. 32.) The Eleventh Circuit reversed the dismissal of the legal mail claims only, finding that Christmas sufficiently stated a First Amendment claim by alleging that Defendant Nabors (in his official and individual capacity) and Defendant Marsha Hill (in her individual capacity) "could access his legal mail while outside his presence." *Christmas v. Nabors*, 76 F.4th 1320, 1329-30 & n.5 (11th Cir. 2023) ("Our plausibility determination here is limited to instances when a prisoner alleges that his legal mail was scanned and uploaded onto a 'memory chip' or other electronic storage medium that enables prison employees to later access that mail outside the prisoner's presence.").

Accordingly, the only claim Christmas is entitled to litigate in the instant case is his First Amendment claim based on the allegation – which had been taken as true at the pleading stage – that jail employees could access his legal mail because it was saved electronically. That is, the Eleventh Circuit did not find that Christmas had stated an access to courts claim. Defendant Marsha Hill has since been dismissed with prejudice from this case. (Doc. 77.) Therefore, the only claim

left is the legal mail claim based on the "memory chip" against Lt. J Nabors in his individual and official capacity.

## LEGAL STANDARD

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A properly supported motion for summary judgment is not defeated by the existence of a factual dispute." *Newcome v. Hernando Cnty. Sheriff's Office*, No. 8:21-cv-2171-TPB-TGW, 2023 U.S. Dist. LEXIS 136007, at *8 (M.D. Fla. Aug. 4, 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Only the existence of a genuine issue of material fact will preclude summary judgment." *Id.*

"[W]hen the nonmoving party bears the burden of proof on an issue at trial, the moving party" is not required to negate the issue with affidavits or other materials. *Willis v. Royal Caribbean*, 77 F. 4th 1332, 1337 n.7 (11th Cir. 2023) (cleaned up). Rather, the moving party need only "point out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' " *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor." *Levine v. Bradshaw*, No. 22-80321-CIV, 2023 U.S. Dist. LEXIS 116035, at *9 (S.D. Fla. July 5, 2023). Where the non-moving party fails to designate such specific facts, summary judgment should be granted. *Jones v. Rutherford*, 546 Fed. App'x 808, 810 (11th Cir. 2013).

## ARGUMENT

Here, there are no material factual disputes. Plaintiff does not contend that Lt. Nabors or any other employee or official at the Polk County Jail opened or read his mail. His unsubstantiated speculation that someone might be able to access the legal mail files is not enough. There is always the possibility that a jail employee could read an inmate's legal mail – certainly the possibility was greater when inmates had legal mail stashed in their cells. What the law requires, however, is proof that the mail was opened outside of the inmate's presence – not just the fear that it could have been.

Christmas does not contend that Nabors ever opened his mail or read his legal mail. He does not have any proof that Nabors did, nor that the Polk County Jail's policy permitted Nabors or any other employee to open the mail outside of his presence. Rather, the proof is all in the opposite direction. The policy was, is, and always has been that jail employees are never permitted to read inmates' legal mail or open legal mail outside of the inmates' presence. Moreover, the evidence demonstrates, as will be set forth below, that it was impossible for any jail employee to access the legal mail files. Christmas admitted in his deposition that he does not know how the legal mail system works; thus, he is unable to challenge Defendant's evidence.

Therefore, Defendant J Nabors has demonstrated that there is no genuine dispute as to any material fact and that he is entitled, in his official and individual capacity, to judgment as a matter of law. Summary judgment should be granted in his favor.

## A.  The Law Requires Only that an Inmate's Legal Mail is Opened in the Inmate's Presence

Inmates do not surrender all constitutional rights at the jail gates, and among the rights protected is the First Amendment right to communicate with his attorney. *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008). "A simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official

may not open an inmate's properly marked legal mail outside of his presence."
*Mitchell v. Duval Cnty. Jail*, 10 F.4th 1226, 1228 (11th Cir. 2021).

### B.      An Inmate's First Amendment Rights are Curtailed to the Extent They are Inconsistent with Penological Objectives

Simply because "inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *Bell v. Wolfish*, 441 U.S. 520 (1979). "Courts understand that running a jail is a formidable task and therefore accord jail officials 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *Levine*, 2023 U.S. Dist. LEXIS 116035, at *14 (quoting *Bell*, 441 U.S. at 547).

An inmate's First Amendment rights are limited to those that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Turner v. Safley*, 482 U.S. 78, 95 (1987); *Pesci v. Budz*, 935 F.3d 1159, 1165 (11th Cir. 2019); *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (stating that an inmate's First Amendment "rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration").

Inmate legal mail may be censored where there is a "penological purpose." *See Estimar v. Sims*, No. 16-CV-62712-DIMITROULEAS, 2016 U.S. Dist. LEXIS 162686, at *17 (S.D. Fla. Nov. 21, 2016). The "substantial deference" courts afford

to prison officials "who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them," "is especially appropriate where 'the regulations at issue concern the entry of materials into the prison.' "  *Id.* (quoting *Thornburgh*, 490 U.S. at 416-17; *Overton v. Bazzetta*, 539 U.S. 126 (2003); and *Bell*, 441 U.S. at 547).

The reasonableness of a jail regulation is determined by applying the four-part test from *Turner:*

> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it;

> (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates;

> (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and

> (4) whether the regulation represents an "exaggerated response" to prison concerns.

*Pesci*, 935 F.3d at 1166 (quoting *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996), and *Turner*, 482 U.S. at 89-91). "To be quite clear, we do not balance these factors to see if some outweigh the others." *Rodriguez v. Burnside*, 38 F.4th 1324, 1330-31 (11th Cir. 2022) (citing *Beard v. Banks*, 548 U.S. 521, 532-33 (2006)). "The last three factors are valuable because they provide more

angles from which to view the fundamental inquiry: whether the prison regulation is reasonably related to legitimate penological interests." *Id.* (citing *Turner*, 482 U.S. at 89). "If that rational connection is missing, 'the regulation fails, irrespective of whether the other factors tilt in its favor.' " *Id.* (quoting *Shaw*, 532 U.S. at 229-30; *Pesci*, 935 F.3d at 1167). "And if the connection exists, the policy will stand."

As the Supreme Court recognized in *Turner*, "prison officials must be able to anticipate security problems and adopt innovative solutions to those problems to manage a prison effectively." *Pesci*, 935 F.3d at 1168 (cleaned up). A prison regulation will only be found unconstitutional if the inmate can demonstrate that "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *See Pesci*, 935 F.3d at 1167 (quoting *Turner*, 482 U.S. at 89-90).

## C.    Plaintiff's First Amendment Rights Were Not Violated

Christmas does not contend that Nabors or anyone else opened his legal mail outside of his presence; his sole claim is that because the legal mail was saved electronically, he was unsure whether anyone could or had opened his legal mail. However, this is not a consideration under Supreme Court and Eleventh Circuit law. Absent any evidence that a jail official had opened his mail outside of his presence, Christmas' claim fails. *Mitchell*, 10 F.4th at 1228.

The Western District of Kentucky has analyzed First Amendment claims regarding legal mail policies similar to the policy at issue in the instant case, finding them constitutional. *See e.g., Chapman v. Henderson Cnty. Det. Ctr.*, No. 4:21-CV-00002-JHM, 2022 U.S. Dist. LEXIS 5113, at *6-8 (W.D. Ky. Jan. 10, 2022) (finding that the jail's "policy of inspecting legal mail for contraband in the presence of the prisoner and then scanning the mail onto a secure electronic tablet system to be read only by the inmate" was legal and did not violate state law or the Federal Bureau of Prisons' policy on legal mail); *House v. Henderson Cnty. Det. Ctr.*, No. 4:21-CV-00038-JHM, 2022 U.S. Dist. LEXIS 166700, at *9 (W.D. Ky. Sep. 15, 2022) (same); *Sanders v. Whitaker*, No. 4:24-CV-P38-JHM, 2024 U.S. Dist. LEXIS 138233, at *5-7 (W.D. Ky. Aug. 5, 2024) (finding no constitutional violation where the plaintiff alleged that the jail's policy of opening legal mail in the prisoner's presence and then scanning the legal mail to a tablet provided the jail "the option to read his mail" and that "Plaintiff's speculation that [the jail official] must have read his legal work [did] not suffice to state a claim").

Even if Christmas presented evidence that opening his legal mail files was possible, which he will not be able to do, that would not suffice to survive summary judgment – he must present evidence that the mail was actually opened. *See Levine*, 2023 U.S. Dist. LEXIS 116035, at *16. In *Levine*, the inmate asserted that thousands of pages of privileged documents were taken from his cell. *Id.*

Certainly, if pages were missing from an inmate's cell, there would be an existential possibility that a jail employee could have read those pages. However, the *Levine* court found that because there was no evidence "suggesting that anyone at the Jail read the 'thousands' of pages of documents taken from Plaintiff's cell," the inmate's First Amendment rights were not implicated. *Id*. That is, the mere possibility that someone could have had access to read those pages was not enough for the inmate to show a constitutional violation.

Even more directly on point, in *House*, the court found that "mere possibility of harm is not enough to form of cognizable claim; there must be an actual injury." 2022 U.S. Dist. LEXIS 166700, at *10. The inmate did "not provide any evidence, or even allege, that [jail] officials read his legal mail at any point, or that they made his legal mail available to anyone other than himself." *Id*. Instead, the inmate "merely stated that [the jail] was 'possibly reading my legal mail' when its officer walked out of sight to scan it and that third parties could, in theory, access his tablet account and read his mail." *Id*. The court found that the inmate's "First Amendment claim [was] insufficient to demonstrate a genuine dispute of material fact." *Id*.

Here, as the inmate in *House*, Christmas has presented, at most, the "mere possibility of harm," which is not enough. In addition, Defendant has gone beyond its summary judgment burden to submit evidence that it was impossible for anyone

at the jail to access any of Christmas' legal mail files. (Doc. 78-3, ¶¶ 16-19; Doc. 78-4, ¶¶ 14-29.) Defendant's evidence also shows that no one at the jail ever opened or accessed Christmas's scanned and saved legal mail files. (*Id.*)

Not only has Christmas failed to establish that his legal mail was opened outside of his presence; Christmas has not identified any actual items of his legal mail that were compromised. *See Levine*, 2023 U.S. Dist. LEXIS 116035, at \*16 ("Because Plaintiff's documents are not attorney mail implicating Plaintiff's First Amendment right to communicate with his attorney, *Al-Amin*, 511 F.3d at 1334, the Policy did not violate Plaintiff's First Amendment rights—even assuming Plaintiff has asserted a cognizable claim."). Christmas submitted only correspondence from the court, (Doc. 23-1 p. 20), which is not legal mail. *Howard v. Chatham Cnty.*, No. CV423-086, 2023 U.S. Dist. LEXIS 124672, at \*10 (S.D. Ga. June 9, 2023) ("The protections afforded to attorney communications does not extend to all 'legal' documents generally. Under federal law, filings in an action, be they court orders or documents filed by parties, are a matter of public record and are not confidential legal mail.") (cleaned up). In his deposition, Christmas could not identify specifics regarding what items of his legal mail were interfered with or how. (Doc. 78-1, pp. 43:40-49:4.) This alone is enough to warrant summary judgment against him.

**D.      Polk County's Legal Mail Policy Serves a Penological Purpose**

Moreover, even if Christmas could establish that his First Amendment rights were compromised by the legal mail policy because of his concern or worry that there was a possibility that a jail official could open the legal mail, Polk County's legal mail policy serves a penological purpose that is "rationally connected" to the Jail's safety and security interests. *See Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 970 (11th Cir. 2018).

As set forth above, Smart Communications was hired to implement its electronic mail system after several inmates became seriously ill and almost died after paper laced with deadly chemicals entered the Polk County Jail via regular inmate mail. (Doc. 78-3, ¶¶ 6-12, 21-23; Doc. 78-4, ¶¶ 7-10.) Later, after an attorney unknowingly delivered laced papers into the jail, the policy was expanded to include legal mail. (*Id.*) Careful attention was provided to ensure that the innates still had access to their privileged mail while keeping paper out of the jail. (*Id.*)

A recent case addressed a similar penological problem. In *Levine v. Bradshaw*, No. 22-80321-CIV, 2023 U.S. Dist. LEXIS 116035, at *3 (S.D. Fla. July 5, 2023), changes to the mail policy "were implemented after at least 73 recorded incidents where liquid narcotics, such as methamphetamines, fentanyl, K2, and MDMA, were introduced into the Jail through paper mail." The new policy required jail staff to "inspect an inmate's privileged mail for contraband,

such as drugs and weapons, in the presence of the inmate" and then, "in the inmate's presence, make a photocopy of the original legal correspondence along with the envelope in which the correspondence was sent." *Id*. at *2. "Jail staff [was] then required to provide the inmate with the photocopies and shred the original documents while the inmate [was] present." *Id*. The court found that the policy "survive[d] review under the standards enunciated in *Turner*." *Id*. at *16.

Christmas has provided no facts to support a contention that the legal mail policy has "no rational relation to any legitimate penological interest"; thus, his claim cannot survive summary judgment. *Pedley v. Bradshaw*, No. 17-80376-CIV-MARRA, 2017 U.S. Dist. LEXIS 53062, at *7 (S.D. Fla. Apr. 4, 2017) (finding a claim failed where the inmate did not provide "any facts to support that the postcard-only policy ha[d] no rational relation to any legitimate penological interest").

## E.   Christmas' Statements Implying an Attempt to Raise an Access to Courts Claim are Untimely, Vague, and Not Sufficient to Survive Summary Judgment

As set forth above, a claim regarding access to courts has not been screened per § 1915A(a) because Christmas did not raise it in his complaint, the district court did not screen it, and the Eleventh Circuit did not analyze it and remand it. Christmas appears to be trying to insert it now into his litigation. He should not be permitted to do so.

Nevertheless, the claim would not survive summary judgment. "The Fourteenth Amendment protects inmates from being deprived of liberty without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). An access to courts claim requires not only evidence that the inmate's legal mail was opened outside of his presence, but also "actual injury." *Mitchell v. Duval Cnty. Jail*, 10 F.4th 1226, 1230 (11th Cir. 2021) (stating that "a prisoner's access-to-courts right requires properly marked legal mail to be opened in his presence, and that a reasonable official would know that to be true" and "an actual injury"). "This essential standing requirement" means that jail officials' actions "must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action." *Wilson v. Blankenship*, 163 F.3d 1284, 1290-91 (11th Cir. 1998). The standard "for that kind of injury" is "high." *Id*. at 1290. The injury must be related to specific items of legal mail, not simply couched in generalities. *See House*, 2022 U.S. Dist. LEXIS 166700, at *12-13.

Even if the access to courts claim was properly before this Court, Christmas' vague and confusing assertions in his deposition regarding entering a plea in his criminal case are far from adequate to establish a factual dispute. As set forth above, Christmas has not and will not be able to submit evidence that his legal mail was opened by jail officials outside of his presence. In addition, Christmas has no competent evidence of an actual injury. To the extent Christmas will contend that

he was denied access to the courts regarding his criminal representation, his assertions fail to establish a violation. Setting aside his lack of allegations regarding any of these claims in his complaint, he has not shown that he was unrepresented by counsel in his criminal case, or, if he was *pro se*, that his decision to represent himself was anything but voluntary. *See Gaston v. Lake Cnty.*, No. 5:23-cv-369-WFJ-PRL, 2024 U.S. Dist. LEXIS 1576, at *13 (M.D. Fla. Jan. 4, 2024) (finding that a pretrial detainee who had the option to receive assistance from court-appointed counsel but voluntarily proceeded *pro se* did not have an access to courts claim). An inmate cannot "voluntarily decline court-appointed counsel who has access to legal material" and then succeed on a constitutional claim "about the difficulty of obtaining legal material while housed in a pretrial detention facility." *Id.*

Should Christmas attempt to assert an access to courts claim, Defendant is entitled to summary judgment on that claim as well because it was not properly raised, Christmas failed to set forth a factual dispute regarding whether his legal mail was opened outside of his presence, and Christmas has not produced specific evidence of an actual injury.

### F.    Lt. Nabors is Entitled to Qualified Immunity

Christmas has not established a constitutional violation, as set forth above. In any event, Christmas has no evidence that Nabors in his individual capacity had

authority to change the policy; to the extent Christmas asserts that Nabors was liable in his supervisory capacity, such liability does not exist under Section 1983. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Christmas has no evidence nor even contends that Lt. Nabors opened his mail outside of his presence or directed any subordinate to do so.

Lt. Nabors is additionally entitled to qualified immunity. Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (quotation marks omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." *Id.* "Qualified immunity thus represents the rule, rather than the exception: Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (quotation marks omitted).

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Whether an officer is entitled to qualified immunity is a two-pronged analysis of whether the officer violated a clearly established constitutional right. *Brown*, 608 F.3d at 734. One

inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Id*. The other inquiry is whether the right violated was "clearly established." *Id*. To show that a right was clearly established, Plaintiff must carry his burden "by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court." *Terrell v. Smith*, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (cleaned up).

No Eleventh Circuit, Supreme Court, of Florida Supreme Court case put Lt. Nabors on notice that the legal mail policy at the Polk County Jail was unconstitutional. Therefore, Nabors in his individual capacity is entitled to qualified immunity. Summary judgment should be granted in his favor.

## CONCLUSION

Christmas has submitted no evidence that Polk County's legal mail policy violated his constitutional rights. Additionally, Lt. Nabors, in his individual capacity, is entitled to qualified immunity. Accordingly, there is no genuine dispute of material fact regarding Christmas' legal mail claim, and Defendant, in his official and individual capacity, is entitled to judgment as a matter of law.

Respectfully submitted this 22nd day of August 2024.


CAMPBELL TROHN TAMAYO
& ARANDA, P.A.

*s/ Jonathan B. Trohn*
Jonathan B. Trohn
Florida Bar No. 880558
j.trohn@cttalaw.com
Jennifer M. Vasquez
Florida Bar No. 71942
j.vasquez@cttalaw.com
1701 S. Florida Avenue
Lakeland, FL 33803
(863) 686-0043
(863) 616-1445 - fax
Attorneys for Defendants