**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| RICKEY LEE CHRISTMAS,<br><br>      Plaintiff,<br><br>v.<br><br>LIEUTENANT J. NABORS and SERGEANT MARSHA HILL,<br><br>      Defendants. | Case No. 8:20-cv-259-TPB-AAS |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Pursuant to Federal Rule of Civil Procedure 56, Plaintiff, Rickey Lee Christmas, by and through undersigned counsel hereby moves for summary judgment on his First Amendment claim (the "Motion"). In support of this Motion, Plaintiff submits the following Motion for Summary Judgment and separately filed Statement of Material Facts with accompanying exhibits. In support of the Motion, Plaintiff states the following:

**INTRODUCTION**

    The constitutional protections provided by the First Amendment do not stop once an inmate's mail has been opened. Rather, as has been the law in this country and circuit since the 1970s, a correctional institution's legal mail policy must ensure to the inmate that his mail will not be read. *Wolff v. McDonell,* 418 U.S. 539 (1974). Otherwise, the confidence in the inmate's legal communications will be undermined, chilling his speech

1

and resulting in a deprivation of his First Amendment rights. *Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008).

Such is the case here, where Polk County Jail ("Polk") scans all legal mail to a kiosk managed by the jail, where the legal mail can only be accessed by that kiosk, and inmates, like Plaintiff Rickey Lee Christmas ("Christmas") have no confidence that their mail will not be read, resulting in Christmas curtailing his correspondence with his attorneys.

It is undisputed that Polk's legal mail policy chilled Christmas' speech and that the policy was implemented and enforced by Defendant Lieutenant Nabors ("Defendant"), despite Christmas' protestations to Defendant that his rights were being violated. It is also undisputed that there is no penological purpose for Polk to maintain an electronic copy of Christmas' legal mail. As such, there is no justification for Defendant and Polk's denial of Christmas' First Amendment rights.

This First Amendment right to the assurance that legal mail will not be read has been clearly established by the U.S. Supreme Court and Eleventh Circuit since the 1970s, and in the decades since, the reiteration of that right has only become more clear. Specifically, the Eleventh Circuit explained: "even the *possibility* that a jail official could read a prisoner's legal mail can violate the prisoner's First Amendment rights." *Christmas v. Nabors*, 76 F.4th 1320, 1326 (11th Cir. 2023). Thus, Plaintiff has a right to the confidence that his communications will be confidential. *Mitchell v. Duval Cty. Jail*, 10 F.4th 1226, 1231 (11th Cir. 2021). And as explained below, no affirmative defenses asserted by Defendant defeat this right. Accordingly, Christmas is entitled to judgment

as a matter of law that Defendant in his individual and official capacities violated his First Amendment rights.

## LEGAL STANDARD

Summary judgment is warranted "when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Owusu-Ansah v. Coca-Cola Co.*, 715 F.3d 1306, 1307 (11th Cir. 2013) (citation omitted). *Williams v. Radford*, 64 F.4th 1185, 1188 (11th Cir. 2023).

Specifically, summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56.

## ARGUMENT

**I. The Legal Mail Policy at Polk Violated Mr. Christmas' First Amendment Right.**

It is well established that a prison inmate "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Pretrial detainees possess at least those constitutional rights that are enjoyed by convicted prisoners, *Bell v. Wolfish*, 441 U.S. 50, 545 (1979), including the right to communicate with attorneys by mail. *Mitchell v. Peoples*, 10 F.4th 1226, 1231 (11th Cir. 2021).

Since the 1970s, the U.S. Supreme Court has made clear that an inmate's First Amendment rights regarding legal mail depend on the "insur[ance] that prison officials *will not read the mail.*" *Lemon v. Dugger*, 931 F.2d 1465, 1467 (11th Cir. 1991) (emphasis in original) (citing *Wolff v. McDonell,* 418 U.S. 539 (1974)). Christmas lacks that insurance because Polk instituted a legal mail policy that requires scanning Christmas' confidential legal communications to be maintained on a "Smart Kiosk" (Plaintiff's Statement of Material Facts ("SOMF") at ¶13), operated by Polk (SOMF at ¶¶13, 28), administered and overseen by Lieutenant Nabors, (SOMF at ¶43), and where Christmas has no other means of accessing his legal mail. (SOMF at ¶21). Further, Christmas has no visibility into what happens to his legal mail after it is uploaded, leaving him to question the confidentiality of his protected communications. (SOMF at ¶¶23, 38-40).

As the Eleventh Circuit recognized in *Al-Amin*, "the only way to ensure that mail is not read when opened is to require that it be done in the presence of the inmate to whom it is addressed." 511 F.3d at 1334 (quoting *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006)). The safeguard set forth in *Al-Amin* falls short where, as here, Polk maintains an electronic copy of legal mail after it is read. (SOMF at ¶¶17-18); *cf. Casey v. Lewis*, 43 F.3d 1261, 1269 (9th Cir. 1994), *rev'd on other grounds, Lewis Casey*, 518 U.S. 343 (1996) ("[T]he district court did not err in concluding that [defendant's] photocopy policy, which allows the confidentiality of inmates' legal documents to be breached" violates plaintiff's constitutional rights). This is so because "even the *possibility* that a jail official could read a prisoner's legal mail can violate the prisoner's First Amendment rights." *Christmas v. Nabors*, 76 F.4th 1320, 1326 (11th Cir. 2023) (emphasis added); *see also Guajardo v.*

4

*Estelle*, 580 F.2d 748, 758 (5th Cir. 1978) (affirming district court holding that the Texas Department of Corrections ("TDC") could not require inmates to leave attorney mail in the writ room or in the hands of a TDC agent).

It is undisputed that there is a possibility that officials at Polk can read Christmas' legal mail, *Christmas*, 76 F.4th at 1326, and that this policy allows the confidence in Christmas' legal documents to be breached. *Casey*, 43 F.3d at 1269. Polk maintains an electronic copy of legal mail when it is scanned to the Smart Kiosk. (SOMF at ¶¶17-18). That legal mail is not maintained in confidence, as Christmas has received other inmates' legal mail (SOMF at ¶37) and Christmas' legal mail has appeared in his regular mail account (SOMF at ¶19). Generally, the system is rife with error, as on at least one occasion Christmas did not receive discovery in his criminal case because the file was too large to scan to the Smart Kiosk. (SOMF at ¶33). Officials (and inmates) can also read the mail while it's being accessed at the kiosk. (SOMF at ¶¶35-36).  Separately, staff can read the legal mail if the inmate chooses to have the original copy placed with their personal property. (SOMF at ¶22); *see, e.g., Guajardo*, 580 F.2d at 758.  Additionally, there are five Smart Communications employees who have access to the decryption code of the legal mail accounts. (SOMF at ¶26).  Not to mention, Christmas' legitimate concern that staff have the ability to access and read his legal mail. (SOMF at ¶¶38-40).  After, all, it is their jail and their computers.  (SOMF at ¶¶ 13, 28).

Thus, the possibility that a jail official could read Christmas' legal mail at Polk are legion, and as a result Christmas withheld information in his legal correspondence out of fear his legal mail may be read. (SOMF at ¶¶39-41). As the Eleventh Circuit has explained

5

"[o]ur cases applying the legal-mail rule hinge on whether a prison official's conduct "sufficiently chills, inhibits, or interferes with" an inmate's "ability to speak, protest, and complain openly to his attorney so as to infringe his right to free speech." *Id.* at 1230–31 (quoting *Al-Amin*, 511 F.3d at 1334). That is precisely what happened to Christmas; out of fear that his legal mail might be read,[1] Christmas stopped communicating freely with his attorneys. (SOMF at ¶41).

## II. Polk's Legal Mail Policy Serves No Legitimate Penological Interest.

While it is undisputed that Polk's policy of scanning legal mail chilled Christmas' communications, the U.S. Supreme Court in *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Al-Amin*, 511 F.3d at 1327 (citing *Turner v. Safely*, 482 U.S. 78, 82 (1987)). Here, however, the legal mail policy is not connected to a legitimate penological interest and does not justify the deprivation of Christmas' constitutional rights. *See Pesci v. Budz*, 935 F.3d 1159, 1167 (11th Cir. 2019) ("At the same time, deference to the professional judgment of the facility administration is not tantamount to carte blanche permission to deny the fundamental rights of free speech and free expression.")

The *Turner* Court identified four factors in determining the reasonableness of a prison regulation: (1) a "'valid, rational connection' between the prison regulation and

---

[1] Other courts have contemplated that the possibility alone of opening mail outside of an inmate's presence would sufficiently chill speech. *See, e.g., Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017) (finding the First Amendment is implicated where plaintiff has no way of knowing whether legal mail was opened outside of his presence).

6

the legitimate governmental interest"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) the impact that accommodation of the asserted constitutional right will have on guards, inmates, and the allocation of prison resources; and (4) the "absence of ready alternatives" to the regulation. *Al-Amin*, 511 F.3d at 1328 (citing *Turner* 482 U.S. at 82). None weigh in favor of Polk.

First, there is no rational connection between scanning the inmate's legal mail to the Smart Kiosk and maintaining an electronic copy on Smart Communications server and any legitimate penological interest. In defense of the policy, Defendant and Declarant Chief Michael Allen assert the security risks posed by allowing paper into the jail (Declaration of Michael Allen, ECF No. 78-3 at ¶9). Yet, there is no legitimate concern that legal mail received from licensed attorneys carries the same risk as non-legal mail, such as chemical sprays, drugs, etc. *See, e.g.*, *Guajardo*, 580 F.2d at 758-59 (dismissing concerns about inmates using attorneys to violate prison rules because attorneys are bound by professional standards and would face criminal sanctions); *Al-Amin*, 511 F.3d at 1331 (defendants can readily check for contraband if attorney mail is opened in the inmate's presence);

Moreover, Defendant puts forward no justification as to why maintaining an electronic copy on Smart Communications' servers, only accessible by the Smart Kiosk, is connected to that penological interest. Notably, prior to the implementation of this policy, officials would open legal envelopes and shake out the contents for contraband to balance the interest of the legal mail system being disabused. (Deposition of Lieutenant

J. Nabors, ECF No. 78-2 at 14:05-13). It is unclear why that policy did not properly accommodate for Polk's penological interests. Nor is it clear why Polk's electronic maintenance of a copy of the legal mail is needed to accommodate this interest.

Second, an alternative means exists, as for years Polk was scanning for contraband in legal mail without maintaining an electronic copy. Additionally, other sheriff's departments throughout Florida have implemented a legal mail policy that reduces the risk of paper entering the jail without maintaining an electronic copy of that correspondence. *See e.g.*, *Levine v. Bradshaw*, No. 22-80321-CIV, 2023 U.S. Dist. LEXIS 116035, at *3 (S.D. Fla. July 5, 2023) (providing a physical copy of legal mail to inmate and shredding the original without maintaining an electronic copy to keep hazardous substances from coming into the jail). Third, the accommodation will not have a negative impact on officials, as administering the mail policy requires more of Polk's resources than the alternative policy. (Deposition of Lieutenant J. Nabors, ECF No. 78-2 at 13:12-14:13) (explaining under the former policy, legal mail would be brought into a vestibule and opened and dumped out in front of inmates); *compare* (Deposition of Lieutenant J. Nabors, ECF No. 78-2 at 28:20-29:09; 31:04-07 (explaining under the new policy, guards have to roll a scanner to each individual inmate, scan the mail, maintain a kiosk, and manage access to the kiosk). Fourth, alternatives are readily available, namely the former policy or a policy whereby an electronic copy is not maintained by Polk.

Because none of the *Turner* factors weigh in favor of justifying a policy where Christmas' protected communications with his attorneys are chilled, Christmas is entitled to judgment as a matter of law.

### a. **Nabors individually violated Mr. Christmas' First Amendment Rights by enforcing the legal mail policy.**

Defendant was a supervisor at the jail, he enforced the legal policy, was trained on the legal policy and trained others on the policy. (SOMF at ¶¶44-46). A supervisor may be liable for the unconstitutional acts of his subordinates when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008) (citation omitted). A causal connection exists, in turn, when the "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.*

Here, it is undisputed that Defendant failed to stop their subordinates from acting unlawfully, but also that Defendant directed his subordinates to act unlawfully by instructing them on how to implement and enforce the legal mail policy, even after Christmas filed grievances and complained about the policy's illegality. *Christmas*, 76 F.4th at 1330 (reversing district court's dismissal of individual capacity claim against Nabors); *see also Mitchell*, 10 F.4th at 1231 (holding that a prisoner stated a claim under the legal mail rule against a prison's mailroom supervisor when the latter "apparently knew about the illegal conduct after [the prisoner] filed grievances, but still failed to stop that" conduct from continuing).

### III. **Mr. Christmas is entitled to summary judgment on Defendants' affirmative defenses.**

> a. *Defendant Nabors is not entitled to qualified immunity.*

To defeat a qualified immunity defense, a plaintiff must establish two things: (1) that officials violated a federal statutory or constitutional right, and (2) that their conduct was clearly established as unlawful at the time. *Mitchell*, 10 F.4th at 1229. Because it is undisputed that officials violated Christmas' First Amendment rights (*see* section I *supra*), the analysis rests on whether the unlawfulness of the officials' conduct was clearly established. *Id.* at 1229. It was.

In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." *Id.*

Creating an electronic copy of legal mail that is maintained on jail computers is unlawful as set forth in *Wolff* in 1974. Although *Wolff* did not consider accessing legal mail electronically, the holding of that case made clear that such conduct was unlawful. In *Wolff*, the Supreme Court considered whether a policy of requiring legal mail to be opened and inspected in the inmate's presence was unlawful. The Court balanced the penological interests against the chilling effect a legal mail policy could have on the inmate's communications with his attorney. The Supreme Court ultimately reasoned that if the inmate could see the official open his legal mail and therefore observe that the official did not read his mail, then his communications could not be chilled, as he knew that the mail was not being read. *Wolff*, 418 U.S. at 577. The rule established was not

that opening legal mail in an inmate's presence *alone* satisfies the constitutional requirements imposed by the First Amendment; rather, that a facility must implement a procedure with the minimal constitutional assurance to the inmate that his legal mail would not be accessed outside his presence. *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("[O]pening properly marked legal mail alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a 'chilling effect.'")

Courts have strictly adhered to *Wolff* in the decades since it was decided. In 1978, the former Fifth Circuit in *Guajardo* affirmed a district court holding that the Texas Department of Corrections could not require inmates to leave attorney mail in a writ room. 580 F.2d at 758. The Smart Kiosk is the 21st Century version of the writ room—it is a space managed by the jail's officials whereby inmates have no visibility into whether their mail can be read by jail officials.

Subsequent, binding Eleventh Circuit case law has further established this law. In *Al-Amin*, the Eleventh Circuit explained why a legal mail policy requires legal mail to be opened in the inmate's presence is "because the only way to ensure that mail is not read when opened … is to require that it be done in the presence of the inmate to whom it is addressed." *Al-Amin*, 511 F.3d at 1334. Again, the Eleventh Circuit emphasized that the rule was meant to assure the prisoner that the mail was not accessed or read after being opened. In *Al-Amin*, the court explained that once the mail was opened in the inmate's presence, and the inmate maintained the only copy of his legal mail in his personal effects, then the inmate would be assured of the confidentiality of the communications.

*Id.* It is clear that Christmas lacked that confidence here, as he lacks the safeguards that ensure that his mail could not be read or accessed by others (be it staff, other inmates or Smart Communications).

Defendant is likewise not entitled to qualified immunity in his individual capacity. In *Mitchell*, the defendant, a mailroom supervisor, was not entitled to qualified immunity where the defendant was alerted to the illegal conduct after plaintiff filed grievances but still failed to stop the illegal legal mail policy from being implemented. 10 F.4th 1226, 1231. Here, Defendant was alerted to the illegal conduct by Christmas' grievances, in addition to personally enforcing the policy, yet failed to stop the policy from being implemented. In *Mitchell*, the defendant also warned the plaintiff against filing more grievances, akin to Defendant's conduct where he responded to Plaintiff's grievance with "You have been answered. The answer will not change just because you don't like it." (SOMF at ¶52). Accordingly, it has been established by the Eleventh Circuit that an individual failing to intervene in the enforcement of an illegal legal mail policy is not entitled to qualified immunity.

b. *Plaintiff exhausted his administrative remedies.*

An inmate is required to exhaust available administrative remedies before filing a lawsuit under the Prison Litigation Reform Act. 42 U.S.C. § 1997(e)(a); *Bryant v. Rich*, 530 F.3d 1368, 1372 (11th Cir. 2008). Therefore, "when a state provides a grievance procedure for its prisoners, … an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows,* 418 F.3d 1152, 1156 (11th Cir. 2005).

Christmas exhausted his administrative remedies by following each step of the grievance procedure ascribed by Polk. The grievance policy at Polk required Christmas to grieve the mail policy then appeal that grievance to exhaust his administrative remedies. Christmas took both of those steps. SOMF at ¶48, 51. Therefore, he met the conditions precedent to file this lawsuit.

   *c. Plaintiff's deprivation is the result of an official policy.*

Defendant is a Lieutenant at Polk, who oversees the officers at South County Jail (where Christmas was housed), promulgated the legal mail policy, responded to grievances regarding the legal mail policy, trained others on the legal mail policy, and enforced the legal mail policy at the jail. (SOMF at ¶¶ 42-46). Filing a complaint against an officer in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). The Eleventh Circuit has applied the *Monell* standard to an official capacity claims against employees of a Sheriff's department. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe C'nty*, 402 F.3d 1092, 1115–16 (11th Cir. 2005). Under *Monell*, the Court said that a city can be held liable under 42 U.S.C. § 1983 for an employee's constitutional violation only if (1) the violation was based on a city policy or custom or (2) the employee is one whose edicts or acts may fairly be said to represent official policy. *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978).

Notably, the Eleventh Circuit has already ruled that Christmas' allegations are sufficient to prove that the legal mail policy is official policy. Plaintiff has now proven those allegations through undisputed evidence. Specifically, the Eleventh Circuit noted:

> Christmas alleged that Jail officials scan all the incoming legal mail and upload it to "a computer called a kiosk." That computer allegedly has "a memory chip" that stores copies of inmates' legal mail. We think these allegations establish that an official policy caused Christmas's alleged constitutional deprivation. After all, it's hard to imagine why the Jail would even have this technology if not for an official policy.

*Christmas*, 76 F.4th at 1329. The evidence now establishes that all incoming legal mail is uploaded to a Smart Kiosk through Polk's agreement with Smart Communications. (SOMF at ¶13). The Smart Kiosk stores copies of that legal mail. As the Eleventh Circuit contemplated, it is hard to imagine why Polk would have this technology but for an official policy.

### d. *This action is not barred by res judicata.*

Defendant does not make clear whether he is asserting issue or claim preclusion is applicable. Moreover, it is impossible from Defendant's pleading for Plaintiff to decipher which case Defendant references: he did not cite a year, case number, or make mention of the parties, just that this issue or claim is precluded because of a decision of Judge Abdoney. ECF No. 59 at 4-5.

This affirmative defense falls short, as it is Defendant's burden to prove an affirmative defense and to do so, defendant must allege the facts necessary to supporting an affirmative defense. *Gomez v. Bird Auto., LLC*, 411 F. Supp. 3d 1332, 1335 (S.D. Fla. 2019). Defendant has not done so when he fails to even cite the case for which his affirmative defense rests.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Summary Judgment and enter judgment as a matter of law in favor of Plaintiff.

Dated this 26th day of August, 2024.

                Respectfully submitted,

                BAKER & McKENZIE LLP
                Sabadell Financial Center
                1111 Brickell Avenue, 10th Floor
                Miami, Florida 33131
                Telephone: + 1 305 789 8900
                Facsimile:  +1 305 789 8953

By:   */s/ Adrienne Harreveld*
      Adrienne Harreveld, Esq.
      Florida Bar No. 1035946
   adrienne.harreveld@bakermckenzie.com

       Jodi A. Avila
      Jodi A. Avila, Esq.
      Florida Bar No. 102787
      jodi.avila@bakermckenzie.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served simultaneously upon docketing on all counsel of record for Defendants on CM/ECF via e-mail.

By: _/s/ Adrienne Harreveld_
Adrienne Harreveld, Esq.